Good morning, Edward Lyman on behalf of Plaintiffs' Compellents. I'd like to reserve five minutes for rebuttal. May it please the Court. I think this is fairly straightforward. I hope that it is. The complaint contains, the second amendment complaint, contains 34 pages and it specifies the conduct, the wrongful conduct of the defendants and it goes into painstaking detail and it far exceeds this boy's requirements in terms of putting the defendants on notice of what the conduct is. And one of the big issues here is that San Bernardino County Sheriff's Department, the individual defendants and the due defendants, they all know precisely what happened here. We don't even have a discovery yet in terms of everything that occurred and the complaint sufficiently alleges that Ms. Pastora, who is a 24-year-old suffering from schizophrenic episodes, who stopped taking her medications because she was pregnant, was arrested by sheriff's deputies, taken to the West Valley Detention Center and placed in a purported safe cell where she allegedly, according to a detective, repeatedly banged her head on the window inside the safe cell and caused the death of her unborn child and herself. She died because of this. That's the only information that we really have at this point. I've done some other investigation on the side to get some more facts that I can allege, but it's pretty basic. This is stated in the complaint and then we go on to the individual defendants in terms of the named officials. I'm sure they're high-ranking officials. These individuals are alleged to be directly involved. Can I ask you about a specific allegation in the second amended complaint? It's paragraph 91 and what it says, it says it only with respect to the due defendants. It says defendant Does 1-10 violated Pastore's rights by verbally harassing and assaulting Ms. Pastore while battering her to seek her compliance and submission to their threats and control. While at all relevant times, Does 1-10 knew that Ms. Pastore was suffering from severe episodes of schizophrenia and it goes on to say they further threatened, harassed and coerced her by refusing to provide her with necessary medical care. When she cried, screamed and yelled for immediate help after injuring herself and while she continued to harm herself. That paragraph in the first amended complaint was actually located in several other spots in the complaint but then was dropped from all of those between the first and second but retained in this place. Can you explain what the significance of that is and why that happened? Sure. In California, California has a Civil Rights Act or the Bain Act and there's a lot of confusion I think among practitioners especially of what's required to allege a civil rights violation of the Bain Act and that's threats, intimidation and coercion and this attempt to violate civil rights. And this is placed specifically here to identify for the court so they can clearly understand that these issues that surround, that make up the circumstances surrounding Ms. Pastore's death and that goes to the issue of coercion, threats and intimidation to violate her civil rights while she's in a safe cell. But why was it dropped from the other claim? Because a similar sort of allegation would seemingly be relevant to whether one was objectively deliberately indifferent to serious medical needs. I think, I don't recall specifically why. I know that this is, again, this is the second amended complaint. I've drafted three total complaints and I've had a lot of meeting with opposing counsel on this. I'm not certain at this time I don't recall why it was removed from other allegations but I felt confident that the first, second, third and fifth claims that they all were supported by sufficient facts and we don't need to go into threats, intimidation or coercion to get there. And what's the basis for the assertion that's made in paragraph 91? Is that being made on information and belief or are there specific facts that would support the allegation that she was, you know, actually screaming, yelling for help while they not only didn't provide help but threatened her and harassed and coerced her? Well, that's found on two things. One is my own work product in terms of information I have from witnesses and then also I have since this complaint has been dismissed, I've obtained information, medical records that indicate that Ms. Pissarro was screaming for help or requesting help and putting her hand in her mouth in the last moments of her life. And that's consistent with the other work product that I've obtained from other inmates housed there. So I can proffer that, whether that pans out, whether I can get that in a declaration, I think is more appropriate for some re-judgment or adjudication. Add to some of the efforts to get additional information through, you know, public records types of requests or other types of records requests? Sure. I sent a Public Records Act request to the county, and the county council refused to respond in a timely manner and still has not provided the records. It's been, I believe, almost two years now since that request was made. She died in March of 2021, and I believe I made the request within two months after that point. So I continually get notices from the county council that they need more time to investigate, to give my client information about precisely how and when his daughter died and who the total defendants would be or who the corrections assistance officers and medical technicians were there that didn't provide her the appropriate and necessary medical care that she obviously needed. And this permeates into other cases as well with the county where they're not compliant with the Public Records Act, and we just can't get the information out unless we file a lawsuit. And it makes it really difficult to even get to the discovery phase in this when we're battling things out in the pleadings, and we don't have all the information. They hold all the information, and they're the government. I would like to go back to paragraph 91, if I could, please. And the allegation was that there were threats and harassment and coercion, but the paragraph says that the county officials or Ms. Pastora's jailers refused to provide her with necessary medical care when she cried, screamed, and yelled for immediate help after injuring herself and continued to harm herself. And that might have been exactly what happened here, but that's a failure to treat or a failure to help her. That does not seem to me to amount to any threat, harassment, or coercion toward Ms. Pastora. So I don't think that the, I guess as I look at this, I'm trying to understand why the district court would have dismissed the complaint notwithstanding that claim or that paragraph, which is indeed detailed. But it seems to me that the theory of not helping her doesn't equate with the allegation of threat, harassment, or coercion that have possibly been made toward her. So in the end, the detail doesn't really matter because the factual allegations don't match up with the legal concerns. Okay. Sure, in terms of paragraph 91, if you go to ER 46 of line 1, if Ms. Pastora is experiencing an acute psychotic episode because she does not have her medication and she's placed in an alleged safe cell, and that's what the county detectives have told my client, and I have witnesses that hear her being battered by DO corrections officers, which we don't have the names of, while she is committing self-harm, and they're not taking care of her and they're exacerbating the situation and depriving her of calling 911, calling in the people to give her proper restraints. But instead battering her and harassing her and attacking her back, I think that's clearly a threat, intimidation, and coercion while she's in a safe cell. The allegation is that because she's in distress, they're hitting and hurting and harassing her? I think because she is not complying and not capable of complying with whatever was going on, and I don't have all the details or facts. I don't have the belt recorders or loop recorders, they're called in there. I don't have all the information from witnesses and corrections assistants to fully detail that at this point. But I think it's important to understand that if she's having this, knowingly they know that she's having a schizophrenic episode and lacking medicine, and if they're not putting in their proper restraints and they're battering her and exacerbating the situation, not giving her the appropriate medical needs, medical treatments and catering to those needs which are emergent, I think that there is threat, coercion, and underlying harassment going on because of her condition. And they're depriving her of that by threatening her, battering her, instead of providing her what she's entitled to under the United States Constitution, which is necessary medical care. I'm going to ask you this question. Let's assume, just for the sake of this question, that we were to conclude that the allegations you have against these three supervisors were not sufficient to survive a motion to dismiss. Okay? But that may be the allegations you have against some of these DOE defendants would be. We just don't know who these folks are. They're not then conserved, obviously. What then? You know, you have this Monell claim, which I think the district court also found lacking. Maybe that's correct. Maybe that's not. But I guess I'm just trying to figure out, if we were to conclude that best, what you have here are potential claims against the DOE defendants but not against the individually named supervisors, and perhaps not a claim against the county attorney. What then should follow? Well, first, in terms of if that were the scenario, which I do disagree with, because if we look at paragraphs, I believe, 45 through 52 of the second amendment of complaints, specifies exactly what I'm just looking for, supervisor liability of these three high-ranking officials. They're directly liable for being deliberately indifferent to Ms. Pester's rights. But assuming that they are dismissed and that is appropriate, then what's next is, and typically in these civil rights actions, where it's against the county or government entity, the only hope plaintiff has against them to meet the statute of limitations is to name DOE defendants, and then we move on to discovery and obtain the names of the corrections assistants and officers. Frequently, defense counsel will provide those names to the individuals and provide the information in their initial disclosures, so that would go ahead and amend the complaint and include those things and have more detail. But we see this, especially with the county of San Bernardino, when a lawsuit is filed, they're not going to even provide public records, so we just don't even have that information available. So I have to go under what other inmates say and what other medical records I've been able to obtain. Clearly, I think there's clearly a liability here, though, based on what the detectives told my client. Okay. Do you want to save the balance of your time for rebuttal? Yes, Your Honor. Thank you. Okay. Very good. Let's hear from counsel for the defendants. Thank you, Your Honor. My name is Shannon Gustafson, and I represent Defendants County of San Bernardino. I'm an individual, a former sheriff, McMahon, undersheriff at the time, Dykes, and Captain Moreno. May it please the Court, I would respectfully disagree with counsel's contention that there was specific conduct alleged in painstaking detail, especially with respect to the individual defendants, McMahon, Dykes, and Moreno. What was alleged as to them was essentially a group theory of liability. Every allegation went through a conclusory allegation that they were aware of something, as were all of the does 1 through 10. There was never any allegation put forth. It is a rather lengthy complaint, and every time we addressed this issue, it got longer. But there were never any allegations asked to these supervisors as to what intentional decision did they make, what action did they take. And I think the Supreme Court was clear, and I believe it was the Iqbal case, that in these suits, a plaintiff must plead that each government official defendant, through the official's own individual actions, violated the Constitution. And we just don't have that fair notice in this complaint. Well, what about the point that Mr. Lyman just established, which is that based on everything available to date, especially with regard to paragraph 91, he alleged, in specifically with regard to Doe defendants, that they engaged in the acts laid out in that paragraph. In reading paragraph 91, the actual allegations that the court indicates were specific about battering Ms. Pastora, those are only referenced as to does 1 through 10. And those allegations are not actually asserted against McMahon, Dicus, and Moreno. And I suspect it's because whatever information counsel does have, he knows they work in the cell with Ms. Pastora and chose to intentionally omit them from that paragraph. Or not from the entire paragraph, but from the specific allegations that the court is referring to. Is a remand appropriate to determine who the does were that are allegedly involved in the behavior set forth in that paragraph? I don't know that it is under the facts of this case. I understand that Mr. Lyman has indicated there was some type of public records request pre-litigation that was not responded to. I do not know anything about that. I was not the county counsel that he was referring to, so I don't know what actually happened there. I do know that since this case has been litigated, we were in this case for nine months, and during that time, discovery was open. And I know Mr. — I wasn't going to raise this because it's not in the record, but Plaintiff's counsel indicated that typically there's an initial disclosure and names are provided. Well, that occurred in this case. There was never any follow-up discovery as to, okay, what did these people do? Okay, can I have some documents? And that option was available and was not taken here. I think the reason the district court dismissed the does here was because there was an opportunity to do discovery at the point when the dismissal occurred. So I don't know that was an accurate statement to indicate that there was nothing done at the point when these does were dismissed. Well, am I remembering right? You can tell me if I'm wrong. I'm remembering the district court's order just simply made no mention of the does defendants. There's no analysis of the does defendants at all. Is that right? There was no analysis of the does defendants. Okay. So let me ask this question, then, because I guess I will confess I tend to agree with you on the inadequacy of the allegations as to the supervisors. They just seem too general. And I don't know, maybe the Mennell allegations are lacking as well. But I do have concerns about the does defendants. It seems to me that somebody at this jail, I don't know who, but one or more of these does defendants potentially did something that violated the plaintiff's constitutional, I'm sorry, Ms. Estorva's constitutional rights. And I guess I'm just telling you I'm uncomfortable seeing all of the does defendants just dismissed outright without any analysis of whether a viable claim might have been stated as to one or more of them. And if so, then providing at least one more opportunity for the plaintiff to try to ascertain their identity so that the case could go forward. Maybe you can just respond to that general concern I just stated. I understand Your Honor's concern. And unfortunately that analysis wasn't done by the district court, so we don't know what was in his head. And I am speculating when I assume it was because we were so far in the case. Because typically what I've seen is you're that far in and the does are dismissed because there are no other claims left, which is what happened here. But we don't know what was in the district court's mind. So there's not much I can speak to that. I tried to find a case on point, and the only case I was able to find was a situation where the does were allowed because there was discovery pending and had not been answered at the time where they were dismissed. So I can distinguish that on there was no discovery pending here. But beyond that, I don't have a case that speaks to Your Honor's concerns. If we were to conclude that the paragraph 91 as to the DOE defendants necessitated some kind of a remand, I'm just trying to understand what would be the scope of that. And so to answer the same question I asked your opposing counsel, which is the paragraph 91 allegations were peppered all throughout the causes of action in the first amended complaint, but they disappeared from all of them except from the Bain cause of action, although they're cross-referenced into the third and fifth, but they're not in the first and second. Why did that happen? And it happened as a result of, I guess, a meeting confirms there's no court intervention between the first and second complaints, but should we attach any weight to the omission of those allegations from the other claims between the first and second amended complaints? I'm sorry, Your Honor, which specific allegations in the first amended complaint? I just want to take a look at it so I can answer your question. In paragraph 91, you know, which has the allegations about threats and harassment, that is contained in the first amended complaint in a couple of other different places. So, for example, it's in paragraphs 63, 64, and 70 of the first amended complaint, and I believe it's also in paragraph 118. That's the Bain, so it was kept in that one. But it was earlier in the first cause of action where they intentionally ignored her cries for help, yelling and screaming, and they did so despite that they heard her violently harming herself within her cell and she was banging her head against the cell walls, which was in front. All those disappeared between the first and second, and I'm not quite sure what to make of that. I don't know what was in Plaintiff's Counsel's head. We did not have a specific conversation about those allegations, so I can't speak to that other than he would be the better person to answer based on his investigation. I would say that's because they didn't happen, but that's for him to do. Okay, and then what would we do with the county? Because the county was originally in the Monell claim, the Bain claim, and the wrongful death, but it was dismissed with prejudice from the original complaint from the Bain claim, and I'm not sure that's being challenged on appeal. So that would leave Monell and wrongful death, and what's the scenario? I mean, I take it if the Doe claims under state law are sufficiently pleaded because of Paragraph 91 that the county would have to go back with them for purposes of the wrongful death claim where they'd be responded superior. Am I wrong on that? It would depend on the claim, Your Honor. Under 844.6, the county has immunity to a prisoner. The exception to that is Government Code 845.6, which is a failure to summon immediate medical care. Correct, but that's essentially what 91 alleges, so it seems to fit right within the scope of the exception to the immunity, so I would assume the county would go back down with the Doe defendants, at least with respect to wrongful death. If that was the court's decision to remand us to the Doe's, then I would agree with the court's analysis as to an 845.6 claim on the county. Okay, and then Monell, as I read the district court order, the only ground for dismissing the Monell was that there was no constitutional violation. So if we conclude that there was as to the Doe's, then that sort of initiates that rationale. It may be that there's other challenges to Monell. Maybe policy wasn't pleaded adequately, et cetera, but the Doe's aren't in front of us. Am I reading that correctly, or do you disagree? You are reading that correctly. I would indicate if the court only found that these additional allegations as to the Doe's were sufficient in 52.1, then that would not bring the county back into Monell. Which is, that would not bring the county back into explain that to me? I think in order for there to be the Monell claim, there has to be the constitutional violation alleged under Section 1983. Right, but why wouldn't, you know, the kind of disregard of medical needs that would fit within the exception of immunity under state law also necessarily meet Gordon's standard for objective deliberate indifference to serious medical needs? It went under Gordon.  Okay, and then that would initiate the Monell ruling. Now, it may be that there's other Monell problems because having a violation isn't enough for Monell. But the only reason the Monell got dismissed was no violation, and that would seem to fall, and therefore everything else would be left open for remand. The Monell claim was dismissed because there were no individual claims left. If the does were brought back, then as to it for an individual constitutional claim, then I think that would change the district court's ruling on the Monell. Okay, and then that would leave Bain, which is kind of a bit of a puzzle because the Bain was dismissed with prejudice as to the county based on immunity, but that now seems wrong if the paragraph 91 allegation is sufficient because then the exception to the immunity would apply. But the problem is it wasn't repleted, and I'm not sure that I see that issue having been raised in the opening brief about Bain as to the county having been improper. The county was dismissed, and it's not in the second amended complaint, which is the issue before this court. The reason it wasn't in the district court. We used to follow the rule that you forfeited an adverse rule unless you repleted the person into every subsequent complaint, so that would have to replete the county into the second amendment in defiance of the, we got rid of that rule. So they could choose in their opening brief to have challenged the county's dismissal with prejudice from the original complaint, even though it's not repleted in the second. The question I have is I'm not sure I see that in the opening brief, that they challenged that ruling even though it now seems questionable. It would not be. It was not argued in the opening brief, nor do I think even if it were, it would be proper to bring the county back in because that 844.6 immunity, I believe, still applies to the 52.1 claim. There's a separate 845.6, which is the only one where the immunity does apply, and it's a failure to send the medical care, not the threats, intimidation, and coercion. Okay. So you think the exception to the immunity for the county that might allow the remand of the wrongful death claim does not exactly match up with the Bain Act standard because the Bain Act standard is different from the exception to the immunity on the wrongful death. We've been talking about the wrongful death. I believe there's case law on that as to the 52.1, and I think it might have even been in our original motion, and it's this, to the First Amendment complaint. I don't think it was in our answering brief because it was not raised in the opening brief. If I don't have it anywhere in this record, I definitely could provide it to the court. My understanding is that there's case law that indicates the 844.6 immunity applies to a 52.1 claim. I'm just not certain if I had it in my original motion to dismiss, which is why the court dismissed it, was focused on what was in the briefing on appeal. Okay. Yes, your time is up. I was just going to invite you to, if you have a closing statement you'd like to make, you're welcome to do so. You read my mind, Your Honor. That's where I was headed. I want to thank the court for its time. I would respectfully request that the court affirm the district court's ruling. At minimum, it should be affirmed as to the individual defendants, of which there has never been fair notice, and plaintiff had multiple opportunities to plead facts and never did so. Okay. Thank you very much for your arguments. Let's see, we've got a minute and a half for rebuttal. Thank you. In terms of what was pled for the individual, the officials, if you look at the second amendment complaint, paragraphs 41 through 48, and then turn to the first cause of action at paragraph 50 through 57, the issue is really that, and it's alleged, and we have to assume it's all true and in favor of the plaintiff, but the individually named defendants knew they could not safely house individuals such as Ms. Testora and knew that people had been dying at the jail and had been subjected to severe injuries, and an order was issued against them by a federal district court stating that you need to comply with these steps in order to meet the threshold of care that you're obligated to provide under the United States Constitution. But these individual officials did not comply with those orders, and they knew that it's not about the necessary violation of these Turner orders from the district court. It's that they knew they could not safely house Ms. Testora or individuals with schizophrenia. They knew that their subcontractors, they pay a lot of money to take care of these individuals. There's a lot of money at stake there that the county is paying these third parties to take care of individuals, and they're not able to afford enough care. And they had a choice to house Ms. Testora or not, or send her to a hospital where she could be cared for appropriately. But they chose to take this on, and that's all specifically alleged, what each and every individual official had their role in. And that was whether or not the sheriff or the undersheriff or the head of West Valley Detention Center was in the cell at the time is not necessarily required there. And in terms of the immunity, I also would say to look at California Government Code 844.6, subdivision D, which also speaks to this exemption or exception to immunity if they're engaged in the practice of the healing arts. That's what's occurring here. This is a severe mental disturbance issue. It's an issue that applies to these jails and prisons throughout the United States of taking in mentally ill people that are a major threat for self-harm and not respecting their rights and providing them. This is avoidable and still can be for the future. And I think that's where we really come down to is that Senator Testora's death and her unborn child's death was preventable, and there was a deliberate indifference to her needs. And in paragraph 91, I forget specifically why I took that out or what happened or if that's a typographical mistake, but there were several different versions of this complaint. And it's complex. It's a lot. There's a lot of factual allegations here that were pled. And, Counsel, you've well exceeded your rebuttal time. Thank you. Thank you for your argument. Sorry to cut you off there. But the case just argued is submitted, and we are adjourned for this session. All rise. This court for this session stands adjourned.
judges: WATFORD, COLLINS, Murphy